**UNITED STATES DISTRICT COURT**
**DISTRICT OF DELAWARE**

| | |
|---|---|
| CHRISTOPHER TAYLOR,<br><br>    Plaintiff,<br><br> v.<br><br>SUMMER INFANT, INC., ROBIN MARINO, ALAN MUSTACCHI, STEPHEN ZELKOWICZ, EVELYN D'AN, ANDREW TRAIN, and STUART NOYES,<br><br>    Defendants. | Case No.<br><br>**COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Christopher Taylor ("Plaintiff"), by and through his undersigned counsel, for his complaint against defendants, alleges upon personal knowledge with respect to himself, and upon information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

**NATURE OF THE ACTION**

1. Plaintiff brings this action against Summer Infant, Inc. ("Summer Infant" or the "Company") and its corporate directors for violating Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a)(4), and 78t(a). By the action, Plaintiff seeks to enjoin the vote on a proposed transaction pursuant to which Kids2, Inc. ("Parent") will acquire the Company (the "Proposed Transaction").

2. On March 16, 2022, Summer Infant entered into an Agreement and Plan of Merger with Parent and Parent's wholly owned subsidiary, Project Abacus Acquisition Corp. (the "Merger Agreement"). Under the terms of the Merger Agreement, Summer Infant stockholders will be entitled to receive $12.00 in cash per share of Summer Infant common stock.

3. On May 16, 2022, the Board authorized the filing of the materially incomplete and misleading Schedule 14A Definitive Proxy Statement (the "Proxy Statement") with the SEC. Specifically, the Proxy Statement, which recommends that Summer Infant stockholders vote their shares in favor of the Proposed Transaction, contains materially incomplete and misleading information concerning, among other things: (a) the Company's financial projections; (b) the background of the Proposed Transaction; and (c) potential conflicts of interest faced by Company insiders.

4. It is imperative that the material information omitted from the Proxy Statement is disclosed to the Company's stockholders prior to the forthcoming stockholder vote so that they can properly exercise their corporate suffrage rights.

5. For these reasons and as set forth in detail herein, Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction unless and until the material information discussed below is disclosed to the Company's stockholders or, in the event the Proposed Transaction is consummated, to recover damages resulting from the defendants' violations of the Exchange Act.

## JURISDICTION AND VENUE

6. This Court has jurisdiction over the claims asserted herein for violations of Sections 14(d), 14(e) and 20(a) of the Exchange Act and SEC Rule 14d-9 promulgated thereunder pursuant to Section 27 of the Exchange Act, 15 U.S.C. § 78aa, and 28 U.S.C. § 1331 (federal question jurisdiction).

7. The Court has jurisdiction over defendants because each defendant is either a corporation that conducts business in and maintains operations in this District, or is an individual who has sufficient minimum contacts with this District so as to render the exercise of jurisdiction

by this Court permissible under traditional notions of fair play and substantial justice.

8. Venue is proper in this District pursuant to 28 U.S.C. § 1391 because defendants are found or are inhabitants or transact business in this District.

## **THE PARTIES**

9. Plaintiff is, and has been at all relevant times, the owner of shares of Summer Infant common stock.

10. Defendant Summer Infant is a Delaware corporation, with its principal executive offices located at 1275 Park East Drive, Woonsocket, Rhode Island 02895. Summer Infant's shares trade on the Nasdaq Capital Market under the ticker symbol "SUMR."

11. Defendant Robin Marino has been Chairwoman of the Board and a director of the Company at all relevant times.

12. Defendant Alan Mustacchi is and has been a director of the Company at all relevant times.

13. Defendant Stephen Zelkowicz is and has been a director of the Company at all relevant times.

14. Defendant Evelyn D'An is and has been a director of the Company at all relevant times.

15. Defendant Andrew Train is and has been a director of the Company at all relevant times.

16. Defendant Stuart Noyes has been Chief Executive Officer and a director of the Company at all relevant times.

17. Defendants identified in paragraphs 11-16 are collectively referred to herein as the "Board" or the "Individual Defendants."

## SUBSTANTIVE ALLEGATIONS

**The Proposed Transaction**

18. On March 16, 2022, Summer Infant announced that it had entered into the Proposed Transaction, stating, in relevant part:

> WOONSOCKET, R.I., March 16, 2022 (GLOBE NEWSWIRE) -- Summer Infant, Inc., doing business as SUMR Brands ("SUMR Brands" or the "Company") (NASDAQ: SUMR), a leader in premium infant and juvenile products, today announced that it and Kids2, Inc. ("Kids2"), a global company that designs solutions to help early-stage parents and families, have entered into a definitive merger agreement pursuant to which Kids2 will acquire all of the issued and outstanding common stock of the Company for cash. Under the terms of the agreement, the Company's stockholders will receive $12.00 in cash for each share of Company common stock that they own, implying a 41.2% premium to the closing price of the Company's common stock on March 15, 2022. The transaction has been unanimously approved by the Company's Board of Directors, and Wynnefield Capital and Jason Macari, significant stockholders of the Company, have signed voting agreements in support of the transaction. The transaction is expected to close in the second quarter of 2022.
>
> Stuart Noyes, the Company's CEO, said, "We are pleased with the value creation this transaction brings to SUMR's shareholders and believe it is beneficial to all stakeholders, as it ensures our leading brands are available and supported by a larger, broad-based global organization. We look forward to continuing to serve our customers through exceptional products and industry-leading innovation."
>
> "This acquisition is a critical move in our long-term vision and growth strategy -- and we are excited about the many synergies between Kids2 and Summer Infant," added Ryan Gunnigle, CEO of Kids2. "We continue to see consolidation in our industry and macro consumer trends with the next generation of parents that require us to do more. The economics of scale and diversity of solutions that come with this acquisition will help us continue to create more tiny wins and added value for our partners and the parents we serve across the globe. With this acquisition, Kids2 will leverage its already existing brand platform strength and add new adjacent categories from Summer Infant's portfolio to further scale globally. Additionally, our global supply chain will be complemented by Summer Infant's capabilities which will allow us to drive wider global distribution. The combined innovation of both, along with more collaboration of industry expertise, will lend itself to more ideation and delivery of more solutions for families across the globe."
>
> The transaction is subject to customary closing conditions, including Company stockholder approval, as well as the closing of debt financing by Kids2 to fund the acquisition. Upon completion of the transaction, the Company will become a

privately-held company and its common stock will no longer be listed on the Nasdaq Capital Market.

**The Materially Incomplete and Misleading Proxy Statement**

19.     On May 16, 2022, the Board caused to be filed a materially incomplete and misleading Proxy Statement with the SEC. The Proxy Statement, which recommends that Summer Infant stockholders vote their shares in favor of the Proposed Transaction, fails to disclose material information to Company stockholders, or provides them with materially misleading information, concerning: (a) the Company's financial projections; (b) the background of the Proposed Transaction; and (c) potential conflicts of interest faced by Company insiders.

*Material Misrepresentations and/or Omissions Concerning Summer Infant's Financial Projections*

20.     The Proxy Statement fails to disclose material information concerning the financial projections for Summer Infant.

21.     For example, the Proxy Statement sets forth that, "[o]n January 7, 2022, Company management met with the Transaction Committee, Consensus and GT. Mr. Noyes relayed to the committee that management had shared preliminary results for 2021 and the current 2022 forecast with Parent." Proxy Statement at 33. Yet, the Proxy Statement fails to disclose a summary of the Company's 2022 forecast that was shared with Parent.

22.     Additionally, the Proxy Statement sets forth:

Also on January 14, the Transaction Committee held a meeting with Company management, Consensus and GT at which Company management updated the committee on its discussions with Parent regarding the updated 2021 results. The Transaction Committee and management discussed and agreed that *the forecast for 2022 should be updated* considering the 2021 preliminary results.

On January 18, 2022, the Transaction Committee had a call with Company management, which informed the committee that *a revised forecast had been prepared* and that Parent was expecting the Company to propose a counteroffer considering the updated forecast and 2021 results. The committee requested that

> Consensus and Company management prepare presentations on the revised forecast and 2021 results for the full Board and that the committee would arrange for a meeting of the Board.
>
> On January 19, 2022, the Board held a special meeting, attended by Company management, Consensus and GT. *The Board discussed the preliminary results for 2021 and the impact on the 2022 forecast, and that this updated information had been shared with Parent,* **and the Company's long-term projections that reflected the revised 2022 forecast**. The Transaction Committee updated the Board on Parent's response to the updated financial information and its request that the Company propose a revised purchase price. The Transaction Committee then asked Consensus to review with the Board its updated analysis with respect to the Company's valuation based on the updated financial information and responded to questions from the Board on the various valuation methodologies and impact on pricing.

*Id*. at 34 (emphasis added).  The Proxy Statement further sets forth that:

> Between March 10 and March 15, 2022, the Transaction Committee met multiple times with GT to discuss outstanding issues on the draft merger agreement and approved extending exclusivity for one day, and also met with Company management to discuss *revisions to the 2022 forecast provided in January* considering preliminary results from February 2022 were lower than expected, and updated long-term projections to reflect the revised 2022 forecast. ***Company management shared the updated 2022 forecast with Parent, and on March 11, 2022, the Transaction Committee reviewed the updated 2022 forecast and long-term projections***.

*Id.* at 36 (emphasis added).  The Proxy Statement, however, fails to disclose a summary of the Company's revised 2022 forecast and the Company's long-term projections that reflected the revised 2022 forecast, that Company management prepared and discussed with the Board at the January 19, 2022 Board meeting and provided to Parent.

***Material Misrepresentations and/or Omissions Concerning the Background of the Proposed Transaction***

23. The Proxy Statement fails to disclose material information concerning the background leading to the Proposed Transaction.

24. Specifically, the Proxy Statement fails to disclose the terms of the non-disclosure agreements ("NDAs") that the Company executed with 60 third parties from April 2020 through

6

September 2020, including whether the NDAs contain a "don't-ask, don't-waive" standstill provision that is still in effect and presently precluding any of these parties from submitting a topping bid for the Company.  *See id.* at 27.

***Material Misrepresentations and/or Omissions Concerning Company Insiders' Potential Conflicts of Interest***

25. The Proxy Statement fails to disclose material information concerning Company insiders' potential conflicts of interest.

26. For example, the Proxy Statement fails to disclose: (a) whether the Company's officers have secured employment with the combined company upon closing of the Proposed Transaction; (b) the details of any employment and retention-related discussions and negotiations that occurred between Summer Infant directors and officers and Parent, including who participated in all such communications, when they occurred and their content; and (c) whether Parent's proposals or indications of interest mentioned management retention in the combined company following the Proposed Transaction or the purchase of or participation in the equity of the surviving corporation.

27. In sum, the omission of the above-referenced information renders statements in the "Certain Financial Projections," "Background of the Merger," and "Interests of the Directors and Executive Officers of SUMR in the Merger" sections of the Proxy Statement materially incomplete and misleading in contravention of the Exchange Act.  Absent disclosure of the foregoing material information prior to the stockholder vote, Plaintiff and the other stockholders of Summer Infant will be unable to make a sufficiently informed decision in connection with the Proposed Transaction and are thus threatened with irreparable harm warranting the injunctive relief sought herein.

**CLAIMS FOR RELIEF**

## COUNT I

**Claims for Violation of Section 14(a) of the Exchange Act and Rule 14a-9 Promulgated Thereunder Against the Individual Defendants and Summer Infant**

28. Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

29. The Individual Defendants disseminated the false and misleading Proxy Statement, which contained statements that, in light of the circumstances under which they were made, omitted to state material facts necessary to make the statements therein not materially misleading, in violation of Section 14(a) of the Exchange Act and Rule 14a-9. Summer Infant is liable as the issuer of these statements.

30. The Proxy Statement was prepared, reviewed, and/or disseminated by the Individual Defendants. By virtue of their positions within the Company, the Individual Defendants were aware of this information and their duty to disclose this information in the Proxy Statement.

31. The Individual Defendants were at least negligent in filing the Proxy Statement with these materially false and misleading statements.

32. The omissions and false and misleading statements in the Proxy Statement are material in that a reasonable stockholder will consider them important in deciding how to vote on the Proposed Transaction. In addition, a reasonable investor will view a full and accurate disclosure as significantly altering the total mix of information made available in the Proxy Statement and in other information reasonably available to stockholders.

33. The Proxy Statement is an essential link in causing Plaintiff and the Company's stockholders to approve the Proposed Transaction.

34. By reason of the foregoing, defendants violated Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder.

35. Because of the false and misleading statements in the Proxy Statement, Plaintiff is threatened with irreparable harm.

## COUNT II

### Claims for Violation of Section 20(a) of the Exchange Act
### Against the Individual Defendants

36. Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

37. The Individual Defendants acted as controlling persons of Summer Infant within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as officers and/or directors of Summer Infant and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Proxy Statement, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that Plaintiff contends are false and misleading.

38. Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause them to be corrected.

39. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control and influence the particular transactions giving rise to the violations as alleged herein, and exercised the same. The Proxy Statement contains the unanimous recommendation of the Individual Defendants to approve the Proposed Transaction. They were thus directly involved in the making of the Proxy Statement.

40. By virtue of the foregoing, the Individual Defendants violated Section 20(a) of the Exchange Act.

41. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) of the Exchange Act and Rule 14a-9, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of defendants' conduct, Plaintiff is threatened with irreparable harm.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff demands judgment and preliminary and permanent relief, including injunctive relief, in his favor on behalf of Summer Infant, and against defendants, as follows:

A. Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction, including the stockholder vote on the Proposed Transaction, unless and until defendants disclose the material information identified above which has been omitted from the Proxy Statement;

B. In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff;

C. Directing the Individual Defendants to file a Proxy Statement that does not contain any untrue statements of material fact;

D. Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

E. Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all claims and issues so triable.

Dated: May 26, 2022

**LONG LAW, LLC**

By  */s/ Brian D. Long*
Brian D. Long (#4347)
3828 Kennett Pike, Suite 208
Wilmington, DE 19807
Telephone: (302) 729-9100
Email: BDLong@longlawde.com

*Attorneys for Plaintiff*